Does this go down, though? Yes, it should. That button on the right. Oh, look at that. Right. That's a little better. Stay close to the microphone, if you will. I do tend to move around a little. We've got Judge Loken on the phone here. Yeah, you're going to have to be. Yeah, I can't hear a thing. Can you hear me now? Yes. Good morning. My name is Leslie Hurst. I am counsel for the plaintiff and appellant Nicholas Lewis. SLUSA, the Securities Litigation Uniform Standards Act, was enacted to curb abusive security lawsuits. It was not enacted to preclude all state law cases that happen to touch on security. Counsel, you need to stand closer or speak louder. I will try to do that. It only precludes state law claims when four requirements are met. You need a covered class action, plaintiff alleges misrepresentations and omissions, in connection with the purchase or sale of a covered security. The first and last requirements are cut and dry and not at issue here. We're going to be talking about whether a plaintiff alleges misrepresentations and omissions and in connection with. I'm going to start with in connection with. The in connection with requirement was addressed head on by the Supreme Court in the Chadbourne case. The context there was because SLUSA does not reach any common law claim that happens to involve securities, where does it stop? And where does it stop is not clear looking at in connection with as it is. In connection with standing alone is an indeterminate standard. As Justice Thomas stated, in connection with, like relations, stops nowhere. So where does in connection with stop for purposes of SLUSA? The Chadbourne court drew the line at materiality. And I'm going to use the court's words because they will be better than my own. Talking about in connection with, the Chadbourne court said, how broad is that scope? Does it extend further than misrepresentations that are material to the purchase or sale of covered security? In our view, the scope of this language does not exceed further. To put to the matter more specifically, a fraudulent misrepresentation or unless it was material to the decision of one or more individuals to buy or sell covered security. Counsel, if your analysis of Chadbourne is going to be based on what the opinion says, you better comment directly and significantly on the sentence, quote, we do not here modify debit. I will gladly. This includes the analysis in debit. Okay. Chadbourne does not modify debit. It does not modify debit in two ways. One, the debit holding, the core of the debit holding was that, was looking at the purchase or sale requirement. And debit said, SLUSA covers purchases, it covers sales, and it covers also holdings. That core holding of debit is untouched by Chadbourne. In addition. Counsel, it's not just a core holding. In addition, your honor, Chadbourne also said, look, we're not creating a new standard here. The materiality standard is what this court has always used. It looked back to debit. It looked back to Zanford. It looked back to all its prior rulings looking at in connection with under SLUSA. And it said what we have always used is that there has to be or there was a material connection between a fraud, fraudulent conduct, and someone's decision to buy or sell a covered security. So the standard in Chadbourne is better articulated, but it's not different than the Supreme Court ever used. So debit is not modified by Chadbourne. What is modified is lower court decisions that used a more amorphous, vague definition of in connection with, which was to coincide. Didn't merely coincide. That is changed by Chadbourne. Debit is not because debit used or debit had a material connection between fraud and someone's decision to buy a security. So Chadbourne does not change debit. In this case, we do not have the requisite material connection. Counsel, wait a minute. Let me read the sentence that I think is most difficult for you from debit. The requisite showing, in other words, is deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller. This broader interpretation comports with the longstanding views of the FCC. And your position, if sustained, will allow state court judicial rulings to completely interfere with and disrupt the FCC's approach to these practices. No, I don't believe that's true. Because the sentence you just read is where the debit court said we're going to use in connection with to cover holders. Our case has nothing to do with holders. In addition, if you look at the Chadbourne case, an argument was made there by the Department of Justice and the SEC. They said, Supreme Court in Chadbourne, your definition of in connection with is going to tie our hands. We won't be able to prostitute things or have litigation as broadly as we did before. The court said, well, that's just not true. Our definition here doesn't restrict you at all. In fact, you've already thrown people in jail and the SEC is conducting litigation. So, no, the definition that we're using, that Chadbourne has, is not going to restrict the SEC or regulatory agencies in any way. What it's going to do is it's going to let... It will prevent the Scott trades of the world from using something the SEC would not prohibit in the non-directed SLOs. That's interference with federal regulation? No. No one's saying that Scott trade can't accept payment for order flow. They can do that. No one's saying they can't do that. But when they do do it, they have to comport with best execution. And they can do both at the same time. They can accept payment for order flow, but they can't do so if it violates a fiduciary duty of best execution. That's what we're saying. Excuse me, SEC regs require best execution, right? Yes. And they also allow payment for order flow. So you can do both and comply with both. Excuse me, have you asserted a violation of a federal duty or law or reg? No. We brought a common law breach of fiduciary duty claim based upon best execution, but that the duty of best execution we're alleging is parallel to the FINRA regulations. But we do not allege a violation of FINRA. If I can talk briefly about where the district court erred here in its application of in connection with. The district court here believed that it was sufficient if the misconduct was connected with Mr. Lewis' choice of a broker. And under Chadbourne, that's not the correct connection. Chadbourne makes you ask, what is the misconduct material to? If it's material to the decision to buy a security, you have a SLUSA problem. If it's material to who you choose as a broker, you don't have a SLUSA problem. Those kinds of claims can still go forward as state law claims. I'd like to move on to the other prong of SLUSA at issue here, and that's the misrepresentation and omission requirement. There the question is, how do you determine if a case is really about fraud, really about misrepresentations and omissions? The majority approach is used by the Second, Third, and Ninth Circuits, and also by the concurrence and dissent in the recent Seventh Circuit opinion, which is the Goldberg v. Bank of America. What you do in the majority approach, and also this approach was previewed by the Eighth Circuit in the Green case, Green v. TD Ameritrade. What you do under the majority approach is you look at the complaint as alleged, not what was alleged in a prior complaint, not what could have been alleged, not what might have been alleged, what was actually alleged. However, you don't stop at the face of the pleadings. You look underneath, and you say, does plaintiff, to win their case, have to prove a misrepresentation or omission? If no, you don't have a SLUSA problem. If yes, you might have a SLUSA problem. Here, using the majority approach, we don't have a SLUSA problem. We allege a normal breach of fiduciary duty case, which is Scott Trade had a fiduciary duty to comport with best execution. Best execution requires it to take steps A, B, C, and D. They did not take steps A, B, C, and D. They violated their fiduciary duty. That's the case. I thought this was all a misrepresentation, a failure to disclose claim. No, it is not. We do not allege failure to disclose in any manner. You know about the practice. He does now. He does now. Exactly. Yes. Well, he did at the time, right? No. We don't allege that. No. I didn't say you alleged it, but wasn't it not in the contracts? What was in the contract was that they had this duty and that they would follow it. That they did not follow it was no, not known. How would you know that when you say do these trades for me? The duty of the best execution includes the ability, however, to take these kinds of payments into account in placing orders, right? Yes, it does. So they knew that. That they were able to do that, right? They can take them into account, but not if it means that that's their sole or primary consideration. The amount that money that Scott Trades is going to get from a choice of a trading venue, they can consider that, but not if it means. So the gravamen of the complaint is that they put too much thumb on the scale in their own favor. Essentially, yes. So, well, that's going to be difficult at the proof stage, but nevertheless, we're not at that stage. We are not. But we can prove a violation of best execution without proving misrepresentations or omissions or nondisclosures. There seem to be a number of cases that hold that the regulation is a preemption and it preempts these kinds of claims. State cases in particular that say that the state law is simply an obstacle to the federal objectives. And I think we've briefed this fairly well. In all of those cases, plaintiffs were asking that the payments themselves be stopped or the practice itself was wrong. We're not challenging the practice itself or their ability to accept the payments. We're challenging the way that they consider the amount of payment they get in contravention to the best venue for the plaintiff. And that's the problem, not the payments themselves. So we don't have a preemption issue in this case as opposed to the other. I don't understand counsel, you're also stating, but if it's not a failure to disclose case and it's not a challenge to the practice itself, what is it? It's a violation of a fiduciary duty that they were obligated. When they selected a trading venue for Mr. Lewis, they had to take certain steps, take steps to make sure he got the best venue for his trade, that he didn't sit in line and never get his... I understand what best execution is, but you also say you're not attempting to bar them from doing the same thing in every transaction, which of course otherwise would require mammoth resources. They can, yes, group trades. They don't have to look at each individual trade. They can group trades. But when they group those trades, they still have to consider the best interest of the purchaser, of their client, before they consider how much payment they get. And I would like to reserve the rest of my time, please. Mr. Hone. Thank you, Your Honors. May it please the Court. Chris Hone for Appellee Scott Trade, Inc. As the poet playwright James Whitcomb Riley famously stated, if it walks like a duck and quacks like a duck and swims like a duck, it's a duck. Despite Appellant Counsel's protestations to the contrary and her clear disagreement with the actual content of the complaint, and that's what we see here is the statements by counsel that were just made are inherently inconsistent with what's in the complaint. Despite that, what's alleged here is actually that Scott Trade deployed a manipulative or deceptive device or engaged in a material omission in connection with the purchase or sale of covered securities. Now, counsel strains mightily to run from the allegations in the complaint, but the substance of the claims can't be changed. They walk and swim and quack like a securities claim and are precluded by SLUSA. As counsel already noted, the two factors at issue are the in-connection factor and the material misrepresentation or omission, or manipulative or deceptive device or contrivance. I don't believe counsel mentioned that, but I think that's also important and something the district court considered as well. And the district court answered both of those questions correctly in the affirmative because what the plaintiffs have alleged is that Scott Trade engaged in conscious wrongdoing, conscious wrongdoing by intentionally deciding it was not even going to attempt best execution and not telling the plaintiff in an effort to, and this is their words, not ours, in an intentional effort, consciously wrongful, intentional effort to maximize kickback revenue. And the word kickback was not used by appellant's counsel sitting here, but it's replete throughout the complaint. And this conduct related to Scott Trade's directing of standing limit orders to national securities exchanges for execution. This necessarily means that the conduct occurred in connection with the purchase or sale of covered securities. Again, counsel does not contest that the purchases or sales related to actual covered securities. And indeed, if we look at the complaint, seven times in the complaint, seven times, the plaintiffs allege that Scott Trade's alleged wrongful failure to pursue best execution was quote, quote, in connection with the routing of standing limit orders to national markets such as NASDAQ and Direct Edge. They've admitted it. They admitted it in the complaint, and now they run from it. They say that they want to say that it's not in connection with when they allege diametrically the opposite in the complaint. They also allege diametrically the opposite in the complaint, that this was a fraud or omission. They clearly allege that the plaintiff and other investors were, quote, relying upon brokers like Scott Trade to send their trades to the correct venues or the proper venues to secure best execution. But that in fact, Scott Trade had intentionally designed its systems, its smart order router, as they allege, to direct the trades not to achieve best execution, but to what they say, secure maximum kickback revenue. And they say Scott Trade did not disclose to anyone the amounts of that kickback revenue that they say Scott Trade received. So first, I'd like to focus on the in connection with requirement. The district court properly held Lewis's putative class action is lucid precluded, and the district court first found that the core of Lewis's complaint was that Scott Trade failed to disclose that it was operating under a conflict of interest, again, their words, conflict of interest, and that it was not attempting to achieve best execution. It was not what? Not attempting to achieve best execution. Based on this, the district court properly found these allegedly wrongful actions to be in connection with and coinciding with the purchase or sale of securities. And as this court's precedent instructs as well, we have to look at the substance of the action. And in this action, they've already acknowledged that this activity of not attempting to achieve best execution was in fact in connection with routing of trades for execution. And as Judge Easterbrook said in Kerr's versus Fidelity Management, best execution, getting the optimal combination of price, speed, and liquidity, affects the net price investors pay or receive for securities, and is therefore widely understood as a subject to regulation under the Securities and Exchange Act of 1934. And you see in the complaint, actually, the plaintiff's cite to a Battaglia study that talks about this fact of resultant price being less, not as favorable to people like the plaintiffs. Judge Easterbrook concluded in that same case, Kerr's, that any argument that best execution is not in connection with the purchase or sale of securities is frivolous, given the Supreme Court's decision in Dabbitt and Zanford. In Dabbitt is on point in controlling, as Judge Loken, I believe you were indicating. And Judge Easterbrook recognized that. And in Dabbitt, the fundamental policy concerns are what's driving that decision and that result. Justice Stevens began his opinion stating the magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated. And Congress enacted SLUSA to make sure federal courts are the exclusive venue for class actions, asserting fraud in connection with the purchase or sale of publicly traded securities, and to make federal securities law the exclusive source of substantive law governing such class actions. Thus, the Supreme Court held that the in connection with language in SLUSA should be given broad interpretation and be satisfied where the complaint of conduct coincides with a securities transaction. And that's, that coincide language is important. If you look at Chadbourne, and Judge Loken, I believe you were looking at the specific language that I was looking at as well. When the court said in Chadbourne, we do not hereby modify Dabbitt, they were talking in that paragraph about the very coincide standard that Appellant's Counsel says is no longer. That you can't square Appellant Counsel's view of Chadbourne with Dabbitt, or Zanford for that matter. And in Dabbitt, the plaintiffs tried to plead state law fiduciary duty in quasi-contractual claims, just similarly to here. And even though the holding of shares was not actionable in a private 10b-5 action, the Supreme Court found the claims precluded under SLUSA. And this court, I think, explained it very well in Sepal v. Bank of America. SLUSA's coverage follows the contours of Section 10b of the 1934 Exchange Act, and SEC Rule 10b-5, when enforced by an agency in the United States. And this very court said that the in-connection with language has to be construed flexibly, not technically or restrictively. And thus, in Sepal, the conducted issue was in connection with a purchase or sale of securities, where the complaint alleged that the defendant was operating under a conflict of interest, and in its own interest, by purchasing securities and receiving fees it did not share with its customers, and did not disclose to its customers. Very similar conduct. And the appellant has not really talked about Sepal. In their brief, they cite it for the standard, but they don't really talk about it. And Sepal is directly on point. Counsel, what is your interpretation of the plaintiff's claim with respect to where is the deceptive device or the omission of fact that's being complained about? Well, and I think you're getting to the fraud or omission element. Yes. And so in that, Your Honor, if you look at it, it's the failure to achieve or even attempt to achieve best execution. And again, you go back and you look at the complaint and it says the plaintiff was relying on Scottrade to pursue best execution, but Scottrade set up its systems in advance, including its computerized smart order router, a device in their terms, to route trades, not to achieve best execution, but to achieve maximum kickback revenue. And kickback obviously connotes an illicit secret payment. And that's, again, that's replete throughout the complaint. And so what you have here, and this is if you look at the Kerr's decision, the decisions that have looked at the failure to achieve or pursue best execution in the Seventh Circuit specifically, Kerr's and Holtz and Goldberg all found that the failure to pursue, the intention not to pursue best execution is fraudulent or deceptive. In fact, the SEC has said the same. It's what? Is fraudulent or deceptive. Yeah. Because in the language of Kerr's, I think, is particularly helpful there. Well, actually, in Holtz, which came out post-Chadbourne, and that's another Seventh Circuit decision by Judge Easterbrook, a fiduciary that makes a securities trade without disclosing a conflict of interest violates the securities law, which is exactly what the plaintiffs have claimed here, that Scottrade was operating under a secret conflict of interest, that it was receiving under-the-table payments, essentially, from third-party exchanges. A broker dealer that fails to achieve best execution for a customer by arranging a trade, whose terms favor the dealer rather than the client, has a securities problem, not just a state law contract or fiduciary problem. So if you look at the best execution cases that have looked at this, they have specifically found that receiving these kinds of payments and failing to disclose them in that type of situation involves either an omission or a deceptive device. Okay. I see. Thank you. It's important to note, also, the plaintiffs mentioned below in their motion to dismiss briefing that this was a kickback scheme. I mean, they're a scheme. They're actually using that very term. Now, we're not hinging, you know, all these words aren't talismanic, but obviously, pursuant to this court's authorities, we look to the gravamen of the allegations. And even if you look, the Dudek decision from this very court is also very instructive, because in Dudek, the court said, even if it's an implicit allegation, implicit allegation relating to an omission in connection with a purchase or sale of securities, that's sufficient. So I want to talk briefly and just go back to the in connection with element and indicate and just talk briefly about Chadbourne. As I mentioned, they're misreading Chadbourne. And in fact, if their reading of Chadbourne is as they purport it to be, that pretty much writes Dabbitt out of the Supreme Court reporter. And Chadbourne very quickly distinguished Dabbitt by looking at basically three different elements. Number one, in Chadbourne, it was the purchase of an uncovered security, namely certificates of deposit. Number two, it was the purchase of any covered security was so remote and tangential, not material, that it didn't matter. And any purchase of securities was done by, not by the plaintiffs, but by the fraudster. And also that there was no ownership interest in securities. We don't have any of that here. We have the plaintiffs actually purchasing or selling securities. They have an ownership interest, and the purchases were made by them. In fact, I think any kind of notion that Chadbourne somehow changed or cabined Dabbitt is dispelled immediately by the Supreme Court statement that it would not impact brokers like Scottraig. Quote, the only issuers, investment advisors, or accountants that today's decision will continue to subject to state law liability are those who do not sell or participate in selling securities traded on U.S. national exchanges. Well, that's exactly what we have here. Scottraig was sending trades to national exchanges as they had met. So Chadbourne was very clear that it was not trying to exempt these types of claims from solution preclusion. And if you look at the post-Chadbourne cases that Lewis cites, I mean, they all relate to uncovered securities where the purchase of a covered security was remote. Briefly want to talk on preemption. I think Judge Loken, as you noted, this is a well-regulated area by the SEC and FINRA. In fact, the SEC has recognized that a failure to achieve best execution can be a fraudulent or deceptive device that's in connection with the purchase or sale of securities. And I think, again, going back to appellant's claim here in front of the court, is that they're not trying to foreclose this activity. They're not trying to require that these funds not be collected, payment for order flow. It's false, and all you have to do is look at paragraph one of the complaint. So preemption doesn't apply to a particular form of relief. What aspect of state law are you saying is preempted? The fiduciary duty under Missouri law attaching to best execution? Are you saying that's preempted? Yeah, I'm saying that their claims are preempted because they are seeking in all of their claims to prohibit Scottrade from considering payment for order flow. I don't understand how I would write your preemption argument. Well, I would write it very consistently with Dahl, the Minnesota Supreme Court, which was, in that very case, the plaintiffs there were trying to preclude payment for order flow and or have that order flow remitted, again, exactly what Lewis is seeking in this case. And Dahl recognized that this is such a matter of national import and also one that's heavily regulated by the SEC that attempting to allow state law standards on what best execution is and how payment for order flow affects best execution stands as an obstacle to the SEC's regulation here. Because the SEC could very well conclude that a particular broker's conduct in receiving payment for order flow does not violate the duty of best execution. Whereas here, in this case, they're trying to set up a state law standard that it could very well. So I do believe the whole fundamental premise of plaintiff's complaint shows that it would be preempted and would stand as an obstacle. In my view, this argument is premature. Unless there are any other questions from the court, I believe my time has expired. Until we know the relief, we don't know what relief, whether it's preempted. All right. Thank you, Mr. Anderson. And how much time does counsel have? A little over a minute, Your Honor. Can I have two? Proceed. Can I have two? Oops, let me go down here. There we go. Okay. So then, briefly, since I do not have a lot of time, on Chadbourne and in connection with, the First Circuit in Hildalgo reads Chadbourne exactly as we are. So I would ask the court to look at the First Circuit reading of Chadbourne in the Hildalgo case. It is what we say. Under defense counsel's reading of Dabit, we would have two standards of in connection with. We'd have a Dabit standard and a Chadbourne standard. And that's not the way SLEUSA works. You've got one standard. It's articulated at Chadbourne. And as the Chadbourne court said, it's the same standard we used in Dabit. There is one standard. It's articulated at Chadbourne. It's used in Dabit. As to the Kurtz case from the Seventh Circuit, that's pre-Chadbourne. It uses the amorphous coincide standard. It does not apply. As to the misrepresentations and omissions, he's looking at a complaint that I don't see. That's not what our complaint says. We don't talk about reliance or intent. Our view of best execution is that most people, including Mr. Lewis, they don't know what best execution is. They don't know what payment for order flow is. That's why it's not issues of reliance and intent. That's why it's a fiduciary duty. Scottrade has the duty to act this way regardless of what the principles know or understand. It's a fiduciary duty. Intent and reliance aren't an issue. Thank you. Thank you very much. Counsel, thank you for your arguments. The case is submitted.